IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**William Grayson,**

   **Plaintiff,**

v.                Case No. 15-CV-2625

**APAC-Kansas, Inc.,**

   **Defendant.**

### MEMORANDUM & ORDER

Plaintiff filed this lawsuit against his former employer, APCA-Kansas, Inc., alleging race discrimination, racial harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. This matter is presently before the court on defendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (doc. 15). Specifically, defendant contends that plaintiff's claims are barred by the doctrine of judicial estopped because plaintiff failed to disclose the claims asserted in this case as assets in the context of his Chapter 7 bankruptcy proceeding. As will be explained, the motion is denied.

**Background**

For purposes of defendant's Rule 12(c) motion, the court accepts as true the following well-pleaded facts alleged in plaintiff's complaint. *See Sanders v. Mountain Am. Federal Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012). Plaintiff began his employment with defendant in May 2012 as a truck driver. Shortly after the start of his employment, plaintiff's immediate

supervisor began making race-based comments to plaintiff and others in plaintiff's presence, including asking during morning meetings "Do you know who the blackest person here is?"; referring to plaintiff as "Willie"; advising employees that it was permissible to use the word "nigger"; and asking plaintiff whether "all black men have big dicks" while showing pornographic videos on his computer during morning meetings.  Plaintiff further asserts that his supervisor showed videos of police officers beating up African-American men and stated "That's what you have to do to a nigger."  According to plaintiff's complaint, he complained about this offensive conduct to his supervisor's superior in July 2012.  The individual to whom he complained notified plaintiff's immediate supervisor about the complaint and plaintiff was warned "to leave everything that is said and done in morning meetings in the morning meetings."  In August 2012, plaintiff's supervisor told that plaintiff that "nigger" simply refers to an "illiterate and ignorant" person and does not necessarily refer to a black person.

In December 2012, plaintiff was laid off from work.  In January 2013, plaintiff and his spouse filed a voluntary petition under Chapter 7 of the Bankruptcy Code.  Plaintiff did not list any potential claims against defendant as an asset on his bankruptcy schedules.[1]  Plaintiff returned to work in May 2013.  When he returned to work, his immediate supervisor continued to make racially offensive comments.  In June 2013, plaintiff asked his supervisor's superior whether there was anyone at the company to whom he could speak about his supervisor's conduct.  Plaintiff was told not to report any conduct.  At that time, plaintiff's supervisor began to scrutinize plaintiff's driving performance more closely and, for the first time in July 2013,

---

[1] The facts concerning plaintiff's bankruptcy filings are not included in plaintiff's complaint but are subject to judicial notice.  *In re C.W. Min. Co*., ___ F.3d ___, 2015 WL 4717709, at *6 n.5 (10th Cir. Aug. 10, 2015) (Circuit took judicial notice of bankruptcy court records).

plaintiff received a disciplinary warning for alleged driving violations. During this same time frame, plaintiff's supervisor and certain co-workers used the word "nigger" in plaintiff's presence and directed that word to plaintiff on multiple occasions. When plaintiff objected, his supervisor told him that it was okay to use the word "nigger" in the workplace.

In late July 2013, plaintiff and his spouse complained to someone in defendant's human resources department that plaintiff was being subjected to a racially hostile work environment and that his immediate supervisor directed racially offensive comments to him, including calling plaintiff a "nigger." Shortly thereafter, plaintiff attended a meeting with a human resources representative, defendant's General Superintendent and his immediate supervisor. During the meeting, the human resources representative directed plaintiff's supervisor not to refer to plaintiff again as a "nigger." After the meeting, plaintiff's supervisor approached plaintiff and stated "I am still going to be watching you, Willie." The following day, plaintiff's supervisor counseled plaintiff for alleged driving deficiencies. One week later, in early August 2013, plaintiff resigned his employment.

A final decree in plaintiff's bankruptcy proceeding was entered on January 15, 2014. At no time prior to the close of plaintiff's bankruptcy case did plaintiff amend his schedules or otherwise disclose his potential claims against defendant.

**Standard**

A motion for judgment on the pleadings made pursuant to Federal Rule of Civil Procedure 12(c) is treated as a motion to dismiss for failure to state a claim made pursuant to Rule 12(b)(6). *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160

3

(10th Cir. 2000) (citing *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992)).  The court will grant a motion to dismiss when a plaintiff's factual allegations fail to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do.  *See id*. at 555.  The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id*., and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).  Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

**Discussion**

In its motion for judgment on the pleadings, defendant asserts that plaintiff's claims are barred by the doctrine of judicial estoppel because plaintiff failed to disclose his claims in connection with his Chapter 7 bankruptcy proceedings.  The doctrine of judicial estoppel is based upon protecting the integrity of the judicial system by "prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *Vehicle Market Research, Inc. v. Mitchell Int'l, Inc*., 767 F.3d 987, 992-93 (10th Cir. 2014) (citations and quotations omitted).  Although "there is no precise formula for judicial estoppel," the doctrine generally applies "when (1) a party takes a position clearly inconsistent with an earlier-taken position; (2) adopting the later, inconsistent, position would create an impression that either the earlier or the later court was misled; and (3) allowing the party to change their position would

4

give them an unfair advantage." *Id*. at 993 (quoting *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1227 (10th Cir. 2011)). The Circuit applies the doctrine "both narrowly and cautiously." *Id*. (quoting *Hansen*, 641 F.3d at 1227).

Defendant has not satisfied its burden of establishing that the doctrine applies to the facts here. The court begins with defendant's argument that plaintiff, regardless of whether his claims had accrued at the time he filed for bankruptcy in January 2013, had an "ongoing duty" to supplement his bankruptcy filings and to disclose his claims at least by the time he resigned his employment. In a Chapter 7 bankruptcy proceeding, property acquired post-petition by a debtor generally does not become property of the estate. *Ambron v. PNC Bank*, 2015 WL 3407596, at *5 (W.D. Mich. 2015) (rejecting judicial estoppel argument where plaintiff's employment was terminated after he filed for bankruptcy; claims are only assets in Chapter 7 bankruptcy if they exist on the petition date); *Garcimonde-Fisher v. Area203 Marketing, LLC*, ___ F. Supp. 3d ___, 2015 WL 1912679, at *4 (E.D. Tenn. Apr. 27, 2015) (rejecting judicial estoppel argument; plaintiff in Chapter 7 bankruptcy is not required to disclose claims that accrued after the date of original petition). In other words, a cause of action qualifies as bankruptcy estate property only if the claimant suffered a pre-petition injury. *Ambron*, 2015 WL 3407596, at *5.[2]

The sole question, then, is whether any of plaintiff's claims had accrued at the time he filed his bankruptcy petition in January 2013. As alleged in his complaint, the facts underlying plaintiff's retaliation claim did not arise until after plaintiff returned to work in May 2013 and his supervisor began scrutinizing his performance more closely and subjected plaintiff to

---

[2] There are limited exceptions to this rule for inheritances, divorce decrees and life insurance, but they are not applicable here. *See* 11 U.S.C. § 541(a)(5).

unwarranted discipline. Moreover, it appears that these facts also support plaintiff's race-based disparate treatment claim such that those claims similarly did not accrue until after the filing of plaintiff's bankruptcy petition. Defendant, then, cannot establish that plaintiff should have disclosed these claims at the time he filed his bankruptcy petition in January 2013. *See Yapp v. Astellas Pharma Global Dev., Inc.*, 2015 WL 1326371, at *3 (N.D. Ill. Mar. 20, 2015) (dismissing gender-based discriminatory treatment claims for actions that occurred prior to Chapter 7 bankruptcy petition, declining to dismiss discriminatory treatment claims for actions that occurred post-petition).[3]

Unlike his other claims, plaintiff's racial harassment claim spans the course of his employment with defendant, with underlying conduct occurring both pre- and post-petition. Defendant summarily contends that plaintiff's harassment claim accrued pre-petition while plaintiff urges that his harassment claim did not accrue until after he returned to work in May 2013. Neither party directs the court to any case analyzing when a harassment claim is deemed to "accrue" for purposes of judicial estoppel in this context. As the Supreme Court recognized in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002), harassment claims "are different in kind from discrete acts." The very nature of a harassment claim involves "repeated conduct" such that the unlawful employment practice "cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a

---

[3] The court does not read plaintiff's complaint as asserting race or retaliation claims based on discrete acts that occurred prior to January 2013. There is no allegation, for example, that plaintiff's layoff in December 2013 was based on his complaints or that defendant otherwise retaliated against plaintiff prior to January 2013. If during the course of litigation it appears that plaintiff intends to assert claims based on discrete acts that occurred prior to the filing of his bankruptcy petition, defendant may reassert its judicial estoppel argument as to those claims.

single act of harassment may not be actionable on its own." *Id.* at 115.  Thus, even though plaintiff's complaint identifies discrete incidents that occurred prior to the filing of his bankruptcy petition and that support his harassment claim, the court cannot conclude on this record that plaintiff's claim accrued prior to January 2013 and defendant has simply not demonstrated that plaintiff's claim necessarily accrued prior to January 2013.  The motion, then, is denied. *See Liddell v. Northrop Grumman Shipbuilding, Inc*., 2011 WL 3841383, at *5-6 (S.D. Miss. Aug. 29, 2011) (denying summary judgment on judicial estoppel issue where defendant did not demonstrate that hostile work environment claim accrued prior to Chapter 7 petition; hostile work environment allegations could not be viewed as discrete acts and court could not conclude on record that claim accrued prior to petition); *Sims v. Big Lots Stores, Inc*., 2006 WL 2805137, at *3-4 (S.D. Miss. Sept. 28, 2006) (declining to apply judicial estoppel to racial harassment claim on summary judgment where alleged incidents of racial harassment preceding Chapter 7 petition were neither severe nor pervasive enough to create actionable claim and harassment intensified post-petition).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for judgment on the pleadings (doc. 15) is denied.

**IT IS SO ORDERED.**

7

Dated this 30th day of September, 2015, at Kansas City, Kansas.


          s/ John W. Lungstrum
          John W. Lungstrum
          United States District Judge